PATTISON ET AL. *v.* GRANT TRUST AND SAVINGS COMPANY, ADMINISTRATOR.

[No. 24,629. Filed May 23, 1924. Rehearing denied November 6, 1924.]

1. APPEAL.—*Briefs.—Failure to Support Assignment of Error. —Waiver of Error.*—When appeal briefs fail to set out points or propositions referring to, or under the heading of, certain assignments of error, this constitutes a waiver of such alleged errors under Rule 22 of the Supreme Court. p. 318.

2. INSANE PERSONS.—*Judgment on Notes in Action Against Guardian.—Res Judicata.*—Where notes were executed by a person before he became of unsound mind and a guardian appointed for him, a judgment on the notes, obtained in an action against the ward, in which service was had by reading the summons for the ward to the guardian as provided by statute (§318 Burns 1914, §315 R. S. 1881), for service of process upon persons under guardianship, was not the same as an allowance made by the court against a decedent's estate as provided under §2838 Burns 1914, Acts 1883 p. 155, but the judgment was an adjudication of the validity of the notes and the heirs cannot, in an action brought by the administrator to sell the real estate of the ward in order to pay the judgments, set up any defense which was or might have been litigated in the action on the notes. p. 319.

3. INSANE PERSONS.—*Constructive Service.—Construction of Statute.—Service on Guardian.*—Section 399 Burns 1914, §390 R. S. 1881, providing that no personal judgment shall be rendered against a defendant constructively summoned applies to constructive service as provided for under §§320, 322 and 323 Burns 1914, Acts 1907 p. 99, Acts 1885 p. 155, §319 R. S. 1881, but it does not apply to a summons served in the manner specified in §318 Burns 1914, §315 R. S. 1881, wherein it is provided that process against persons of unsound mind shall be served upon the guardian of such persons. p. 321.

4. JUDGMENT.—*Jurisdiction to Render Personal Judgment.— Substituted Service.*—A court cannot acquire jurisdiction, by constructive or substituted service, to render a personal judgment against a nonresident who does not appear, but the legislature may authorize personal judgments upon substituted service as to residents within the State. p. 323.

5. JUDGMENT.—*Action to Set Aside Judgment for Fraud.—Unnecessary Party.*—Where a cross-complaint was filed to the petition of an administrator to sell certain real estate in order to pay judgments rendered against the decedent in his lifetime, one who had not been a party to any of the judgments, against whom no relief was asked, although it was alleged that he aided in the fraud, and who could have no interest in any action contesting the validity of the judgments was not a necessary party under §269 Burns 1914, §268 R. S. 1881. p. 324.

6. APPEAL.—*Dismissal of Unnecessary Party to Cross-Complaint.*—The dismissal of a party to a cross-complaint as to whom the pleadings were not sufficient and could not have been made so by amendment, was harmless. p. 325.

7. EXECUTORS AND ADMINISTRATORS.—*Cross-Complaint to Action by Administrator.—Dismissal of Parties.—Failure to File Claims.*—In an action by an administrator to sell real estate to satisfy judgments on certain notes issued by decedent, a cross-complaint by the heirs alleging fraud in procuring the notes and joining certain parties as holders of the notes was properly dismissed as to parties whose claims were not alleged to have been filed or allowed against the estate, in view of §2844 Burns 1914, Acts 1883 p. 157. p. 325.

8. APPEAL.—*Review.—Conflict of Evidence.*—Where there is a conflict of evidence, the Supreme Court will not disturb the judgment of the trial court. p. 326.

From Grant Circuit Court; *G. A. Henry,* Special Judge.

Cross-complaint filed by Mary A. Pattison and others to a petition of the Grant Trust and Savings Company, administrator of the estate of James I. Hogston, deceased, and others. From a judgment for the administrator the cross-complainants appeal. (Transferred from Appellate Court under §1397 Burns 1914.) *Affirmed.*

*John A. Kersey, William J. Houck* and *Eichhorn &
Edris,* for appellant.

*Strickler & Messick, David M. Bell* and *Van Atta &
Clawson,* for appellees.

GAUSE, J.—Appellee, the Grant Trust and Savings
Company, as administrator of the estate of James I.
Hogston, deceased, filed its petition herein to sell the
real estate of said decedent to make assets with which
to pay the debts of said estate.

Said petition alleged that a part of the indebtedness
of said estate consisted of five judgments, amounting
to about $15,000, which had been rendered against said
decedent in his life time, the judgment creditors in said
five judgments being Richard A. Hogston, Emma Jaqua
and Emma Frelof Jaqua, who are also appellees herein.

The appellants are two of the children of said dece-
dent and were made defendants to said petition to sell.

Appellants filed a partial answer to said petition, in
which answer it was alleged that said judgments were
rendered upon notes which were forgeries and which
had been procured through fraud and by duress and
without consideration.

It was also alleged that said decedent, at the time
the judgments were rendered, was under guardianship
as an infirm person, and that he was weak physically
and mentally and unable to be present in court when
said judgments were rendered.

It is then alleged that said judgments were procured
through the fraud and collusion of the judgment plain-
tiffs with the guardian and his attorney, and also that
through the fraudulent conduct of another son of the
decedent, no defense was made to said actions.

It is alleged that said judgments are void and ap-
pellants say that there is no necessity to sell said real
estate to pay such judgments and ask that only so much

of the real estate be ordered sold as is necessary to satisfy other debts of said estate.

The court upon motion of appellees struck out parts of said answer which sought to attack the validity of said judgments and of the notes upon which they were framed, because of alleged fraud in the procurement of said notes.

Appellants filed a cross-complaint and made defendants thereto the administrator of said estate, the judgment plaintiffs in said five judgments, and also Alfred Hogston, Thomas D. Barr and the Citizens Trust and Savings Company.

Said cross-complaint was in the nature of an action to set aside said judgments on the ground of fraud practiced in obtaining them.

It is alleged in said cross-complaint that said five judgments were rendered upon notes which were spurious and were obtained through duress practiced by said Alfred Hogston. That said Alfred Hogston obtained a series of spurious notes from said decedent by fraud and duress and distributed some of them to the said judgment plaintiffs, and that he sold one of said notes to Thos. D. Barr and one to the Citizens Trust and Savings Company.

It is then alleged that said five judgments were obtained through the fraud of the judgment plaintiffs and said Alfred Hogston.

It is alleged that at the time suits were brought by said Richard A. Hogston, Emma Jaqua and Emma Trelof Jaqua, the said James I. Hogston was under guardianship and unable to assist in any defense to said notes, and that said plaintiffs and Alfred Hogston fraudulently prevented any defense being made thereto and fraudulently induced the guardian of said James I. Hogston to believe that said notes were valid.

It is also alleged that said parties prevailed upon

said guardian to prevent other attorneys employed by the appellants from appearing in said suits and defending the same.

The prayer of said cross-complaint was that said five judgments be set aside and that appellants be permitted to set up said defenses to said notes and for other proper relief.

The court upon motion dismissed said cross-complaint as to Alfred Hogston, the Citizens Trust and Savings Company and Thos. D. Barr.

The issues were closed by general denials.

The appellants filed with their cross-complaint separate lists of interrogatories which they asked that Alfred Hogston, Emma Jaqua and Emma Trelof Jaqua be required to answer.

These interrogatories all related to the validity of the notes upon which the judgments were rendered and concerned the consideration therefor and the circumstances under which they were given.

The court upon motion struck out all of said interrogatories.

Said cause was submitted to the court and there was a finding and judgment for the administrator upon his petition to sell and against the cross-complainants upon their cross-complaint, and said land was ordered sold and there was a judgment against appellant for costs upon the cross-complaint.

Appellants filed a motion for a new trial, which contained many alleged reasons, but the only stated reason referred to in appellants' statement of "Points and Authorities" in their brief is that the finding of the court is not sustained by sufficient evidence.

The court overruled the motion for a new trial.

The appellants have assigned as error in this court the following: "(1) The court erred in sustaining the motion to strike out parts of the amended partial an-

swer, as to the first paragraph of the motion. (2) The court erred in sustaining the motion to strike out parts of the amended partial answer, as to the second paragraph of the motion. (3) The court erred in striking out the interrogatories to Alfred Hogston. (4) The court erred in striking out the interrogatories to Richard A. Hogston. (5) The court erred in striking out the interrogatories to Emma Jaqua. (6) The court erred in striking out the interrogatories to Emma Trelof Jaqua. (7) The court erred in sustaining the motion of Alfred Hogston, to dismiss the amended cross-complaint, as to himself. (8) The court erred in sustaining the motion of the Citizens Trust and Savings Company, to dismiss the amended cross-complaint, as to it. (9) The court erred in sustaining the motion of Thomas D. Barr, to dismiss the amended cross-complaint, as to himself. (10) The court erred in overruling the motion for a new trial."

There are no points or propositions stated in appellants' brief referring to or under the heading of either the first or second assignment of errors. Under Rule 22 of this court such alleged errors are waived. *Baker* v. *Stehle* (1918), 187 Ind. 468.

Propositions Nos. 1 to 12 inclusive of appellants' brief, in so far as they refer to any specific assignments of error, refer to assignments numbered 3, 4, 5 and 6, which challenge the action of the court in striking out the several sets of interrogatories.

These interrogatories all sought to elicit information relating to the validity of or consideration for the notes upon which the judgments were rendered.

Appellants take the position that the five judgments referred to in the pleadings are void as judgments; that they only have the effect of allowances against the guardianship, and that when the ward died and the guardianship was ended, the allowances were extin-

guished; that no personal judgment could be rendered against the ward, and that the validity of the notes upon which the judgments were rendered is in question in this proceeding, so that interrogatories relating to the validity of such obligations and the circumstances of their creation are pertinent.

There is in fact only one question raised by the action of the court in striking out the interrogatories propounded to the several parties, and that question 2. is whether, in a proceeding brought by an administrator to sell real estate of a decedent to make assets with which to pay judgments rendered against the decedent in his life time, the heirs can attack the validity of notes upon which the judgments were obtained, where the judgment debtor, at the time the actions were brought and judgments obtained, was under guardianship as a person of unsound mind, but which notes were claimed to have been executed before he became of unsound mind and before the guardianship. We think the answer must be that under the circumstances stated in the question the rendering of the judgments upon said notes was an adjudication of the validity of the same, and the heirs cannot set up in the proceedings to sell any defense which either was or might have been litigated in the actions on the notes.

Appellants contend that the rendering of the judgments in such cases was only equivalent to making an allowance against the guardian for such amounts, and that such allowances were extinguished when the guardianship was terminated. If the actions had been against the guardian upon contracts or obligations of the guardian, then so far as the estate of the ward was concerned, the judgments rendered could not have been enforced by execution against the ward's property; but the court having jurisdiction of the ward's estate could have ordered them paid out of such estate, or if the

guardian paid them, he would have been entitled to reimbursement out of such estate, providing they were proper charges against said ward. *Rooker* v. *Rooker, Gdn.* (1878), 60 Ind. 550; *Kinsey* v. *State, ex rel.* (1880), 71 Ind. 32; *Stumph, Gdn.,* v. *Goepper* (1881), 76 Ind. 323; *Vogel* v. *Vogler* (1881), 78 Ind. 353; *Ray, Rec.,* v. *McGinnis, Gdn.* (1882), 81 Ind. 451; *Elson* v. *Spraker* (1885), 100 Ind. 374; *Lewis* v. *Edwards* (1873), 44 Ind. 333; *Turner* v. *Flagg, Gdn.* (1893), 6 Ind. App. 563; *Hall* v. *Ferguson, Gdn.* (1900), 24 Ind. App. 532.

If such judgments or allowances against the guardian were not paid when the ward died, then in a proceeding such as this, to sell the lands of the deceased ward, by his administrator, the heirs of such estate would not be precluded from contesting the validity of such obligations.

But we have an entirely different situation here.

In the case at bar suits had been brought upon notes alleged to have been executed by said ward himself before the guardian was appointed and at a time when it is not claimed the ward was of unsound mind.

The suits were against the ward and it is not alleged in either said answer or said cross-complaint that process was not served upon the ward.

In fact the evidence shows that in each case a summons for said ward was issued and served by reading to the guardian, which is the manner provided by the statute for service of process upon persons under guardianship. §318 Burns 1914, §315 R. S. 1881.

Appellants seek to draw a parallel between judgments rendered against a person who is at the time under guardianship, and an allowance made by the court against a decedent's estate, but the cases widely differ.

An action against the person who is under guardianship may result in a personal judgment, if there is a

personal liability, the same as against any other defendant, while the statute expressly prohibits an action against an administrator upon a claim, but provides for the filing of the claim and for the allowance thereof either by the administrator or, if he disallows it, then by the court, and §2838 Burns 1914, Acts 1883 p. 155, then provides as follows: "The allowance of a claim, as provided for in this act, shall, as between the claimant and the executor or administrator, be operative, and as an adjudication of the validity and amount of the claim, and presumptive evidence thereof in any proceeding by the executor or administrator for the sale of the real estate of the decedent to discharge the liabilities of his estate."

In view of this statute, decisions holding that in a proceeding by the administrator to sell real estate, the heirs may contest the validity of a claim theretofore allowed by the court against said estate are not in point on the question here involved.

Appellants contend that service of process by reading to the guardian, as provided by the statute, and as in fact was done in the suits here involved, only constituted constructive notice, and that no personal judgment could be rendered against the ward upon that kind of notice.

Section 399 Burns 1914, §390 R. S. 1881, provides that no personal judgment shall be rendered against a defendant constructively summoned. Appellants are in error in viewing a summons against an insane ward, served by reading to his guardian, as constructive service, within the purview of the above statute. Sections 320, 322 and 323 Burns 1914, Acts 1907 p. 99, Acts 1885 p. 155, §319 R. S. 1881, provide for constructive service of process, which consists of two forms, either notice by publication to nonresi-

dents or persons absent or concealing themselves, or personal notice outside of the State, which shall have the effect of notice by publication. It is clear that §399 Burns 1914, *supra,* prohibiting a personal judgment upon constructive notice, refers to notice given in one of the above ways.

Section 318 Burns 1914, *supra,* provides for what is called personal service. It provides for service either personally upon the defendant, or by leaving a copy at his usual and last place of residence, and then provides that, "Process against persons of unsound mind shall be served upon the guardian of such persons, if there be a guardian." Section 399 Burns 1914, *supra,* does not have reference to a summons served in the manner specified in §318 Burns 1914, *supra.*

It cannot be said that it is only when the summons is served by reading to the defendant personally that there has been personal service, and in all other cases that it is constructive service within the meaning of the statute, because it has been held in this state that personal service refers to service other than by publication, or what is its equivalent, service without the state. *Dunkle* v. *Elston* (1880), 71 Ind. 585.

It has been repeatedly held in this state that service of process by leaving at the last and usual place of residence of the defendant is not constructive service, although the defendant did not receive the notice. *Sturgis* v. *Fay* (1861), 16 Ind. 429, 79 Am. Dec. 440; *Pigg* v. *Pigg* (1873), 43 Ind. 117; *Dunkle* v. *Elston, supra.* "It has been held that service by copy is not constructive, but actual, service and is conclusive between the parties." *Meyer* v. *Wilson* (1906), 166 Ind. 651.

In the case of *Sturgis* v. *Fay, supra,* it was claimed that notice by copy, which was not received by the defendant was not personal but constructive service, and

that therefore under the statute above referred to, no personal judgment could be rendered.

It was held in the above case that as to residents within the State, the State had jurisdiction to subject them to her judicial power, but this was not so as to nonresidents. That as to residents, the State had power to determine how they should be notified while within the State, and that persons so notified were regarded as personally and not constructively summoned. It was therefore held that a personal judgment was valid although no actual notice was had, if the statute was complied with.

As to the power of the State to prescribe the manner of service of process, other than by actual personal notice, upon residents within the State and authorize personal judgments thereon, see: *Beard* v. *Beard* (1863), 21 Ind. 321; 1 Freeman, Judgments (4th ed.) §127; 1 Black, Judgments §277; note in 35 L. R. A. (N. S.) 292; note in 50 L. R. A. p. 585.

The conclusion from the above, and many other authorities, is that a court cannot acquire jurisdiction by constructive or substituted service, to render a

4. personal judgment against a nonresident who does not appear, but that as to residents who are within the State, the legislature may authorize personal judgments upon proper substituted service.

It was expressly recognized by the United States Supreme Court that service of process upon a guardian may be sufficient to give a state court jurisdiction to render a personal judgment against the ward. *New York Life Ins. Co.* v. *Bangs* (1880), 103 U. S. 435, 26 L. Ed. 580.

We have a statute which makes it the duty of the guardian of a minor to appear for and defend all suits against the ward. §3068 Burns 1914, §2521 R. S. 1881. The statute prescribes the same powers and

duties for guardians of insane persons. §3107 Burns 1914, §2551 R. S. 1881.

As we have seen, the statute also provides how process shall be served upon such ward.

The record in this case shows that not only was the summons served upon said ward in the manner provided in the statute, but that his guardian appeared for him and filed answers of general denial, *non est factum*, want of consideration and duress; that the issues thus formed were submitted to the court and the judgments involved were rendered after a hearing thereof.

These judgments were binding upon said ward. See, *Makepeace* v. *Bronnenberg* (1896), 146 Ind. 243, 248. It follows that said judgments constituted an adjudication of the validity of the notes upon which said judgments were predicated and appellants could not litigate the question of their validity in this action. There was therefore no error in striking out interrogatories which were only pertinent if appellants could litigate the validity of the original notes.

Assignment of error No. 7 challenges the action of the court in dismissing the cross-complaint as to Alfred Hogston. Alfred Hogston was not a proper party to the cross-complaint which sought to set aside the five judgments heretofore referred to. He was not a party to any of said judgments and could have no interest in any action contesting their validity. The cross-complaint alleged that said judgments were obtained by fraud and that he participated in and aided said fraud, but no relief was asked or could be obtained against him in said cross-action. He had no interest in the controversy adverse to the cross-complainants and was not a necessary party to the complete determination of the questions involved. §269 Burns 1914, §268 R. S. 1881.

Since the pleading not only was not sufficient as to

him, but could not by amendment have stated a cause of action against him, no harm was done ap-
6. pellants in dismissing the same as to him. *Wilson v. Tevis* (1916), 184 Ind. 712.

Assignment of error No. 8 challenges the action of the court in dismissing the cross-complaint as to the Citizens Trust and Savings Company. The only
7. allegation relating to said company was that a false or spurious note purporting to have been signed by the decedent had been sold by Richard A. Hogston to said company. It is not alleged that said note had been filed or allowed as a claim against said estate, and the holder of a claim which had not been allowed would certainly not be a proper party to the cross-complaint. If the holder of a note which is invalid for any reason files it as a claim and undertakes to enforce it, the statute makes ample provision for litigating the question of its validity. §2844 Burns 1914, Acts 1883 p. 157.

There was no error in sustaining the motion to dismiss as to said trust company.

Assignment of error No. 9 challenges the action of the court in dismissing the cross-complaint as to Thomas D. Barr.

The only allegation as to said Barr is that Alfred Hogston claimed to have sold a note signed by the decedent to said Barr. For the reasons given under assignment No. 8 above, there was no error in dismissing the cross-complaint as to said Barr.

Assignment of error No. 10 challenges the action of the court in overruling the motion for a new trial.

The only proposition or statement of any point in appellants' brief relating to this assignment is proposition No. 16 in the brief, that the finding of the court is not sustained by sufficient evidence. Under this proposition appellants say that the theory of the partial an-

swer and the cross-complaint is that the five judgments were obtained by fraud and they claim that the evidence showed such fraud.

Without taking the space to set out the evidence, it will suffice to say that it was appellants' theory and they offered evidence for the purpose of proving, that when the several suits were brought which finally resulted in the judgments in dispute, the guardian of said ward employed an attorney to defend said actions, and that through the influence and connivance of Alfred Hogston and the plaintiffs in said suits said attorney and the guardian made no defense thereto, and that the actions of said parties amounted to fraud.

It appears from the evidence that these appellants employed other attorneys to defend said actions. The evidence is then conflicting as to whether the attorneys employed by appellants withdrew from the cases because the guardian would not agree to pay for their services or because the guardian and his attorney would not permit them to appear. The guardian filed answers in said suits, including pleas of *non est factum*, want of consideration and duress. The evidence is conflicting as to how much effort said guardian and his attorney made to secure evidence to sustain the answers filed, but there is evidence from which the court could well find that a good faith defense was made. There was substantial evidence tending to support the finding. There was also evidence, which, if believed by the trial court, would have required a different finding.

Under such circumstances this court cannot disturb the judgment.

The judgment is affirmed.

Ewbank, C. J., not participating.