L. D. HARTER *et al.* v. JOHN G. MILLER *et al.*

No. 13,238.   ( 73 Pac. 74.)

SYLLABUS BY THE COURT.

PRACTICE, PROBATE COURT—*Guardian and Ward—Liability of Bondsmen.* The probate court has no authority to entertain an application by the creditor of a guardian of minor children for the allowance against the estate of the wards of a judgment of the district court rendered against the guardian on a contract made by him in carrying on a general mercantile business with the wards' money, and has no authority to order the payment of such a judgment in such a proceeding. The violation of the order does not constitute a breach of the guardian's official bond.

Error from Rice district court; ANSEL R. CLARK, judge. Opinion filed July 10, 1903. Reversed.

*J. E. Stillwell,* and *S. K. Woodworth,* for plaintiffs in error.

*Samuel Jones,* and *S. H. Jones,* for defendants in error.

The opinion of the court was delivered by

BURCH, J.: A guardian of minors, with a fund of $600 in his hands, as the entire assets of his wards, obtained from the probate court of his appointment an order authorizing him to engage in the general-merchandise business, and to replenish the stock from time to time, as he might find it necessary, by purchases in the usual course of business. Under this authority the guardian conducted a trade amounting to many thousands of dollars annually, with the result that he finally became unable to pay the debts of the business. Under the order of the probate court, and upon liberal representations as to the condition of the business, the guardian purchased goods of defendants in error upon the usual terms of

Harter v. Miller.

mercantile credit.   Finding it necessary to resort to
legal process to compel payment of the account, de-
fendants in error reduced it to judgment in an action
against the guardian in the district court.   They then
presented the judgment of the district court to the
probate court in a proceeding analogous to that pro-
vided by statute for the allowance of claims against
the estates of deceased persons, and secured an order
on the guardian for its payment.   The order of the
probate court not being complied with, they brought
an action in the district court against the guardian
and his sureties upon the guardianship bond, alleging
as a breach the failure to comply with the order of the
probate court to pay the judgment.   A demurrer to
the petition was overruled, and, after issues of fact
had been joined, a trial was had, resulting in a judg-
ment for the creditors.   The guardian and his sureties
ask a reversal of the judgment upon numerous grounds,
only one of which requires discussion.   If there was
no authority for the order of the probate court to pay
the judgment previously rendered in the district court,
there was no breach of the bond, and the demurrer to
the petition should have been sustained.

By the constitution the probate court is given such
probate jurisdiction and care of estates of deceased
persons, minors, and persons of unsound mind as
may be prescribed by law.   (Art. 3, § 8.)   The leg-
islative enactment relating to the powers of probate
courts reads as follows:

"The probate courts shall be courts of record, and,
within their respective counties, shall have original
jurisdiction:   *First*, to take the proof of last wills and
testaments, and admit them to probate, and to admit
to record authenticated copies of last wills and testa-
ments executed, proved and admitted to probate in
the courts of any other state, territory, or country;

*second,* to grant and revoke letters testamentary and of administration; *third,* to direct and control the official acts of executors and administrators, settle their accounts, and order the distribution of estates; *fourth,* to appoint and remove guardians for minors, persons of unsound mind, and habitual drunkards, and make all necessary orders relating to their estates, to direct and control their official acts, and to settle their accounts; *fifth,* to bind apprentices, and exercise such control and make such orders respecting them and their masters as the law prescribes; *sixth,* to hear and determine cases of *habeas corpus; seventh,* to have and exercise the jurisdiction and authority provided by law respecting executors and administrators, and the settlement of the estates of deceased persons.'' (Gen. Stat. 1901, § 1974.)

The general powers of guardians of the property of minors are thus defined:

''Guardians of the property of minors must prosecute and defend for their wards. They must also, in other respects, manage their interests, under the direction of the court; they may thus lease their lands or loan their money during their minority, and may do all other acts which the court may deem for the benefit of the wards.'' (Gen. Stat. 1901, § 3283.)

If the authority contended for exists, it must be found in these statutes.

It is well understood by the bench and bar of England and the United States that a guardian has no power to embark the estate of his ward in manufacturing, trade, or speculation. Nor has the guardian power to make contracts to be performed in the future which will be binding upon his ward. If such authority were to be exercised it would not pertain to the office of guardian proper. It would be a function extraordinary, conferred for a special purpose. The legislature might grant such power directly to the guardian, or it might do so indirectly by authorizing

the probate court to confer it.   Since conduct of the character described ordinarily constitutes a breach of trust, it has been said that an express authorization is essential; and cogent reasons may be urged for the doctrine that mere inference and implication from general language are insufficient.

Whether the legislature of the state of Kansas, by the mere general words of the foregoing statutes, intended to invade the settled rules of law relating to the powers of guardians and legitimate conduct theretofore regarded as reprehensible in a trustee, and intended to brook the pursuit of financial vagaries and chimeras with the money of helpless infants, if only the probate judge may be seduced into belief in their substantiality and reality, or whether it merely intended to give the court full supervision, direction and control over the conduct of the guardian within the field of a guardian's rightful activities, it is not necessary to decide in order to determine the rights of the parties to this suit.   It may be assumed, without so deciding, that the judgment of the district court in the first action properly established the liability of the guardian as such to the creditor.   After assuming so much, however, it is plain the legislature has done nothing to invest that judgment with any added weight or effect or to impose further liability on the estate than the judgment itself imports.   The probate court is given the same power to direct and control the official acts of executors and administrators that it has to direct and control the official acts of guardians.   But by section 2892, General Statutes of 1901, special jurisdiction is given the probate court to hear and determine all demands against the estates of a deceased person, as follows:

"The probate court shall have jurisdiction to hear

and determine all demands against any estate; and a concise entry of the order of allowance shall be made on the record of the court, which shall have the force and effect of a judgment.''

By section 2891, General Statutes of 1901, special provision is made for the establishing of demands by the judgment or decree of a court of record, as follows:

"Any person having a demand against an estate may establish the same by the judgment or decree of some court of record, in the ordinary course of proceeding, and exhibit a copy of such judgment or decree to the probate court; but the estate shall not be liable for costs in any such proceeding commenced within one year from the date of the letters of administration.''

By various sections of the statute an elaborate and intricate procedure is provided for establishing all claims against such estates. All such provisions are absent from the statutes governing the subject of guardian and ward. Evidently the legislature intended to inhibit proceedings in the probate court by creditors to establish claims arising under contracts with the guardian, against the estates of infant wards, and intended to leave such claimants to pursue the courses open to them at common law. The creditors of the guardian had no right, therefore, to besiege the probate court with their claim, and it was a matter of pure supererogation on the part of the probate court to entertain the application, and to order the claim paid. That order could create or impose no duty on the guardian. Failure to comply with it was not a breach of the guardianship bond, and that bond, given primarily for the protection of minor children, is not a resource of the creditor by virtue of such order.

By another cause of action recovery was sought on

the ground that the guardian's purchases were in ex-cess of his authority. If so, clearly the sureties on his bond are not liable.

The judgment of the district court is reversed, with direction to sustain the demurrer to the petition.

All the Justices concurring.