### In re EDWARDS.

No. 17834.   Opinion Filed May 29, 1928.

Rehearing Denied July 24, 1928.

(Syllabus.)

1. **Guardian and Ward—Duty of Guardian to Carry Out Order of Court Directing Former Guardian to Pay Claim Against Estate.**

Where an order of the county court is made allowing a claim against the estate of a ward, and directing its payment by the then qualified and acting guardian, and thereafter such guardian resigns and another is appointed and duly qualifies to said office, the duty of discharging said order by payment out of the funds of the ward is transmitted to and devolves upon the succeeding guardian.

2. **Same—Former Order for Payment Sufficient to Avert Running of Statute of Limitations Against Claim.**

Where the court directs the payment of a claim by a guardian out of the estate of the ward, and such guardian thereafter resigns and another is appointed and duly qualifies to the office, and thereafter the court makes an order directing the last-named guardian to discharge the original allowance of said claim by payment, the first order, if unappealed from, is sufficient to avert the running of the statute of limitations against said claim.

3. **Same—Validity of Order for Payment—Collateral Attack.**

Where the court renders its findings that a certain claim is just, due, and unpaid, and directs payment thereof by the guardian, and the face of said order is not shown to be void, and no appeal is taken from said order, such order thereafter is not subject to collateral attack.

Error from District Court, Osage County; Jesse J. Worten, Judge.

In the matter of the guardianship of Julia Edwards, an incompetent. From order of county court directing guardian, R. J.

Morrow, to pay claim of C. W. Stephens, the guardian appealed to district court, where judgment was for appellant, and the claimant brought error. Reversed, with directions.

Roff & Threadgill, for appellant.

Humphrey & Spence, for defendants in error.

LESTER, J.   On November 25, 1919, C. W. Stephens obtained a judgment in the district court of Osage county, Okla., against Julia Edwards on a promissory note for the sum of $1,410 and interest. Sometime thereafter the county court of Osage county adjudged Julia Edwards incompetent and appointed J. W. Halterman as her guardian. Thereafter, C. W. Stephens made an application to the county court of Osage county, asking that the guardian of Julia Edwards be authorized to pay said judgment, and the court thereafter made the following order touching said application:

"This matter coming on for hearing on this 25th day of July, 1924, upon the application of C. W. Stephens for an order authorizing and directing the guardians of the above-named ward to pay to him a certain judgment as set forth in said application; and the applicant appearing in person and by E. A. Threadgill, his attorney; and a copy of said application having been served on the Superintendent of the Osage Agency, and the said Superintendent of the Osage Agency appearing by J. M. Humphreys, probate attorney; the court, upon presentation of said application, finds that the said claim is just, due and owing, and should be paid.

"It is, therefore, considered, ordered and adjudged by the court that the guardian, J. W. Halterman, be, and he is hereby authorized and directed to pay to C. W. Stephens, the sum of $1,410 and interest at 10 per cent. from July 18, 1917, and the further sum of $145."

It appears that J. W. Halterman, during the time that he exercised the office of guardian, did not pay the amount due said

C. W. Stephens; and that thereafter said J. W. Halterman resigned as such guardian and R. J. Morrow was appointed and qualified as his successor.

On December 19, 1925, said C. W. Stephens applied to the county court for a citation upon R. J. Morrow, guardian of Julia Edwards, to show cause why he had not paid the claim of Stephens under the order of July 25, 1924.

A hearing was had on said citation and the county court rendered the following order:

"This matter coming on for hearing on this 14th day of December, 1925, upon the application of C. W. Stephens, claimant, for a citation to R. J. Morrow, guardian, to show cause why he should not be adjudged in contempt of this court for his failure to pay the claim of C. W. Stephens; and the claimant appearing by Roff & Threadgill, his attorneys, and the guardian appearing in person and by Humphrey & Spence, his attorneys; the court, after hearing argument of counsel, finds:

"That said order of this court is a valid and binding order upon the guardian, and should be complied with.

"It is, therefore, ordered, adjudged and decreed by the court that the guardian, R. J. Morrow, be, and he is hereby authorized, ordered and directed to comply with the order of this court made and entered on the 25th day of July, 1924, authorizing and directing the payment of the claim of said C. W. Stephens. * * *"

R. J. Morrow, the last-named guardian, served notice of appeal from the order entered on the 14th day of December, 1925, and thereafter filed his appeal in the district court on February 18, 1926, and when the matter came on for hearing before the district court, it rendered its judgment in favor of the guardian, R. J. Morrow, with directions to the county court to vacate its order of July 25, 1924, and of December 14, 1925, directing the payment to C. W. Stephens of the sum of $1,410, with interest and attorneys' fee, from which judgment C. W. Stephens has appealed to this court.

The principal propositions, as raised by said C. W. Stephens on review in this court, are:

"The order of July 25, 1924, was not void, could not be attacked collaterally, and no appeal having been taken therefrom, was res adjudicata and binding upon the parties.

"3. The order of July 25, 1924, was made and entered within five years after the rendition of the original judgment upon which the claim was based and operated as a new judgment."

The issues as here presented depend upon the force and effect of the order made by the county court on July 25, 1924, which order provided that the claim presented by C. W. Stephens was just, due and owing, and further directed its payment by the guardian.

The claim so allowed was against the estate of the ward. It was in no wise prejudicial to the interest of the then qualified and acting guardian or his bondsmen, and when the said guardian thereafter resigned, the duty of discharging said claim by payment was transmitted to the succeeding guardian.

When the appeal from the county court to the district court in said matter was pending, the parties to the appeal entered into a certain stipulation of facts. Said agreed statement of facts in part is as follows:

"That said R. J. Morrow appealed from said last-named order to the district court of Osage county, Okla., for the reason that no execution had been issued upon said judgment within five years after the rendition thereof."

It will be seen that R. J. Morrow complains only of the order of the county court made on the 14th day of December, 1925, directing that he pay the claim of C. W. Stephens, theretofore authorized by the county court on the 25th day of July, 1924. No attack is made on the order of July 25, 1924, for that order was made within five years from the date of the judgment upon which said claim was based.

The appellee in this court cites the case of Harlow v. Cook, 112 Okla. 114, 240 Pac. 74. We find in that case this court said:

"Our attention is also called to the case of Evans v. Harris, 60 Okla. 27, 158 Pac. 898, but we do not regard these authorities as controlling in the instant case, because, in the Evans Case, the county court was dealing with an application of an attorney who was asking that a certain amount be allowed him as a fee for services rendered to the guardian. This petition, we think, was sufficient to invoke the jurisdiction of the court, and the attorney, having filed his petition and submitted himself to the jurisdiction of the county court, was bound by the judgment of the court in this particular, and having taken no appeal, the judgment became final, and this court, we think, properly held that it was res judicata and a bar to the further prosecution of the claim in another court."

The most significant statement to be found

in the quotation from the above-cited case is that which states:

"This petition, we think, was sufficient to invoke the jurisdiction of the court, * * * and having taken no appeal, the judgment became final, and this court, we think, properly held that it was res judicata and a bar to the further prosecution of the claim in another court."

The case of McFarland v. Barker, 80 Okla. 274, 196 Pac. 131, involved the judgment of the county court approving the final report of the guardian and also directing the payment of certain claims. An appeal was had to the district court, and the district court on trial de novo rendered judgment against the guardian for certain amounts and disallowed certain claims ordered to be paid by the guardian, and said guardian appealed from the judgment of the district court to the Supreme Court, and this court in that case said:

"The correctness of the judgment of the district court depends upon whether the order of the county court, directing the guardian to pay out said funds, was void or erroneous. If void, the order is subject to collateral attack, and might be attacked in this proceeding, but if erroneous, the same is not subject to a collateral attack, but would be subject to be reviewed on appeal."

This court also in the same case referred approvingly to the case of Evans v. Harris, 60 Okla. 27, 158 Pac. 898, wherein this court stated:

"The county court has power to determine the amount due an attorney for services to a minor, where guardianship proceeding is pending in such court, and an order, upon the attorney's petition filed in such guardianship proceeding, asking the allowance and payment of such fees, is res judicata as to a subsequent suit against the guardian as such to recover the same fees for the same service."

We desire to here note that in the case of Evans v. Harris, supra, the court also stated:

"There is wide conflict in the authorities construing statutes which contain no broader provisions than our own. It has been held that a court exercising probate jurisdiction is entirely without power, in the absence of direct statutory authority, to determine the disposition of claims against the estate of a minor. See Swift v. Swift, 40 Cal. 456; In re Breslin's Estate, 135 Cal. 21, 66 Pac. 962; Harter v. Miller, 67 Kan. 468, 73 Pac. 74; George & Ratcliff v. Dawson, Guardian, 18 Mo. 408; Ross' Probate Law & Pr. 980; Woerner on Law of Guardianship, pp. 195, 342; McNabb v. Clipp, 5 Ind. App. 204, 31 N. E. 858.

"On the other hand, the power to pass upon the right to attorney's fees and the like is declared to be vested in courts of probate under general statutory authority no broader than our own. Kelly v. Kelly, 72 Minn. 19, 74 N. W. 899; McCoy v. Lane, 66 Neb. 847, 92 N. W. 1010; In re Price's Appeal, 116 Pa. 410, 9 Atl. 856, and cases cited. If the question depended upon the statute alone, the California cases, coming from the state from which our Probate Code was adopted, would be highly persuasive, if not controlling authority. In our judgment, however, the provisions of our Constitution have entirely eliminated the effect of these cases. Section 13, art. 7, of the Constitution provides in part as follows:

" 'The county court shall have the general jurisdiction of a probate court. It shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; grant letters testamentary and of administration, settle accounts of executors, administrators, and guardians; transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the sale, settlement, partition and distribution of the estates thereof.'

"The language of this section could hardly be broader. Certainly the settlement of the amount of these attorney's fees was 'business appertaining to the estate' of this minor. Being such, the county court had jurisdiction to determine the question arising regarding it."

The order of the county court made on July 25, 1924, was in full force and effect and unsatisfied when Morrow, appellee here, became guardian of the estate of his ward, and it appears that the order made on December 14, 1925, by the county court, was in aid of and for the purpose of compelling compliance with the order of July 25, 1924.

The order of July 25, 1924, may have been erroneously made; however, being unappealed from, it thereby became a binding and legal obligation against the estate of the ward.

Judgment of the district court is reversed, with instructions to dismiss the appeal from the county court, heretofore filed by R. J. Morrow, guardian.

MASON, V. C. J., and HARRISON, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 28 C. J. p. 1168, §284.